**John D. WILDMAN; Catherine D. Wildman, Plaintiffs–Appellants,**

v.

**PACIFIC COAST INDEPENDENT BROKERAGE, INC.; Davies Wu, Defendants–Appellees.**

No. 00–15370.

D.C. No. CV–96–03877–EDL.

United States Court of Appeals, Ninth Circuit.

Argued and submitted July 12, 2001.

Decided Aug. 6, 2001.

---

Before SNEED, WARDLAW, and BERZON, Circuit Judges.

## MEMORANDUM *

John and Catherine Wildman appeal the district court's confirmation of an arbitration award issued by a panel of arbitrators of the National Association of Securities Dealers ("NASD") in favor of Pacific Coast Independent Brokerage, Inc. ("Pacific Coast") and Davies Wu. The NASD arbitration panel dismissed all of the Wildmans' claims against Pacific Coast and Mr. Wu for violations of the Securities Exchange Act of 1934, civil RICO, and California state law violations. These claims arose from the opening of securities accounts by the Wildmans with Pacific Coast between 1993 and 1995. In addition, the NASD panel found that the Wildmans were liable to Pacific Coast for money due on trades ordered by the Wildmans. The Wildmans seek to vacate the award on the grounds that the district court erred when it assigned the matter to arbitration, and when it confirmed the arbitration award. Our jurisdiction rests on 18 U.S.C. § 1291, and we review de novo the district court's decision to compel arbitration. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir.2000). We affirm.

Between 1993 and 1995, John Wildman opened four accounts at Pacific Coast with investment objectives of "trading," "speculation," and "growth." Two of these accounts were joint accounts with his mother, Catherine Wildman. In the forms that Mr. Wildman completed at the time he opened the accounts, he stated that he possessed extensive investment experience

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

and that his net worth was $2 million. In the course of opening the accounts, both John and Catherine Wildman signed four standard contracts containing arbitration clauses in large, bold print directly over the signature line. These arbitration clauses provided that any disputes between the Wildmans and Pacific Coast would be referred to final and binding arbitration at the NASD.

An agreement to arbitrate a dispute is a matter of contract. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). California contract law applies in the determination of whether the Wildmans and Pacific Coast agreed to arbitrate. *See Wagner v. Stratton Oakmont Inc.,* 83 F.3d 1046, 1049 (9th Cir.1996). Under California law, a claim that an arbitration clause is unenforceable because of fraud is for the court to decide if the fraud was specifically directed at the arbitration clause. *Hayes Children Leasing Co. v. NCR Corp.,* 37 Cal.App.4th 775, 782–83, 43 Cal.Rptr.2d 650 (1995).

Although the Wildmans do not deny signing the various agreements containing the arbitration provisions, they state that they did not read any of the documents they signed. They chose not to do so because Davies Wu advised them when they opened the accounts that any disputes would be simply "settled between them."[1] Their failure to read the documents, they argue, is excused by virtue of their reliance on Mr. Wu's alleged statement. We construe the Wildmans' argument as one alleging fraud in the inception of a contract.

To succeed on a claim of fraud in the inception, "plaintiffs must show their apparent assent to the contracts—their signatures on [the] agreements—is negated by fraud so fundamental that they were deceived as to the basic character of the documents they signed and had no reasonable opportunity to learn the truth." *Rosenthal v. Great Western Fin. Sec. Corp.,* 14 Cal.4th 394, 425, 58 Cal.Rptr.2d 875, 926 P.2d 1061 (1996). A misrepresentation of the contract's contents alone does not render a contract's contents void "where the defrauded party had a reasonable opportunity to discover the real terms of the contract." *Id.* at 419–20, 58 Cal.Rptr.2d 875, 926 P.2d 1061.

Mr. Wildman had ample opportunity to review the account agreements containing the arbitration clauses. When he signed the account agreements in 1993 and 1995, he was a self-declared day trader with a high net worth. The language of each of the contracts clearly and explicitly provided for arbitration of disputes arising out of the contractual relationship. Therefore, Mr. Wu's alleged misrepresentations did not rise to the level of fraud in the inception, and an agreement to arbitrate existed between the Wildmans and Pacific Coast. The district court did not err in compelling arbitration.

The Wildmans also ask us to throw out the arbitration award itself. However, the scope of judicial review of an arbitrator's award is extremely narrow. *See SFIC Properties, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers,* 103 F.3d 923, 924 (9th Cir.1996). Long-standing precedent of this Circuit and the California courts prevents us from reviewing the merits of the arbitrators' findings. *See Line Drivers, Pickup & Delivery Local Union No. 81 v. Roadway Express, Inc.,* 152 F.3d 1098, 1099 (9th Cir.1998). Because the Wildmans fail to show that the

---

1. Mr. Wu adamantly disputes having made any such statement to Mr. Wildman. The district court did not make a finding on this question, nor are we aware of the arbitrators' finding on this question.

award manifestly disregards California law or public policy, the district court's confirmation of the arbitration award must be upheld. *Todd Shipyards Corp. v. Cunard Line, Ltd.,* 943 F.2d 1056 (9th Cir.1991).

AFFIRMED.